UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BONNIE DUARTE,<br><br>       Plaintiff,<br><br>  vs.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL SECURITY;<br><br>       Defendant. | CIV. NO. 23-00331 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL;
AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

      Before the Court is Plaintiff Bonnie Duarte's ("Plaintiff") appeal from both Administrative Law Judge David Romeo's ("ALJ") October 5, 2022 Decision and the Appeals Council's denial of Plaintiff's request for review of the ALJ's Decision ("Appeal").[1] Plaintiff's Opening Brief was filed on

---

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated September 6, 2023 ("AR") at 8-29. [AR, filed 9/13/23 (dkt. no. 7), Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable (dkt. no. 7-3) at PageID.29-49.] On October 13, 2022 and on November 11, 2022, Plaintiff requested review of the Decision. [Exh. 16B, AR at 174-75 (dkt. no. 7-5 at PageID.197-98) (request for review of Decision, dated 10/13/22); Exh. 17B, AR at 176-78 (dkt. no. 7-5 at PageID.199-201) (request for review of Decision, dated 11/11/22).] The Appeals Council denied Plaintiff's request for review on June 9, 2023, making the ALJ's Decision the Commissioner's final decision. [Notice of Appeals Council Action ("AC Notice"), AR at 1-4 (dkt. no. 7-3 at PageID.22-25).] Thus, the ALJ's Decision constitutes the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of

(. . . continued)

October 15, 2023. [Dkt. no. 10.] Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner") filed the Answering Brief on November 14, 2023, and Plaintiff filed her Reply Brief on November 27, 2023. [Dkt. nos. 12, 13.] Oral argument on the Appeal was heard on January 5, 2024. For the reasons set forth below, Plaintiff's Appeal is granted in part and denied in part. The Appeal is granted insofar as the Commissioner did not show jobs exist in significant numbers that Plaintiff can do. The case is remanded to allow the ALJ to reconcile apparent conflicts between the impartial vocational expert's ("VE") vocational evidence and the Dictionary of Occupational Titles ("DOT") concerning whether Plaintiff can perform the job of vehicle escort driver. The Appeal is denied as to the ALJ's rejection of Plaintiff's subjective testimony. The matter is remanded to the ALJ for further proceedings consistent with this Order.

<u>**BACKGROUND**</u>

On August 26, 2020, Plaintiff protectively filed (1) a Title II application for disability and disability insurance benefits, and (2) a Title XVI application for supplemental security income, both alleging she was disabled beginning May 31, 2019. Plaintiff's claims were denied, initially and on

---

Social Security ("the Commissioner"). [<u>Id.</u> at 1 (dkt. no. 7-3 at PageID.22).]

reconsideration. On April 19, 2021, Plaintiff filed a written request for a hearing. At the July 28, 2022 hearing before the ALJ, Plaintiff was self-represented and VE Brenda Cartwright testified. [Decision, AR at 11 (dkt. no. 7-3 at PageID.32).]

Plaintiff testified that she was born with a clubbed right and has very limited motion. Plaintiff stated she has difficulty standing, walking and bending; has stiffness and ongoing pain throughout the day, and has swelling in both feet. Plaintiff testified she has arthritis and scar tissue, and an ultrasound of her foot and legs revealed evidence of arterial occlusive disease. Plaintiff testified that this condition prevents her from working because she is unable to continuously walk and move about. Plaintiff stated that even on a good day she walks with a limp, cannot run, and experiences pain in her left foot and leg because they are compensating for her right foot. See Social Security Administration Office of Disability Adjudication and Review Transcript of 7/28/22 hearing ("Hrg. Trans."), AR at 39-40 (dkt. no. 7-3 at PageID.60-61).

Plaintiff testified that she has a foot brace and uses a cane daily, but she does not use the cane when she is at home. Plaintiff testified that, on a daily basis she wakes up, makes her bed, wakes up her children, prepares breakfast, and does light cleaning. When her children are home, they help her with those household activities. Plaintiff testified that she does

3

not normally go anywhere in the day unless she has a doctor's appointment or needs to go to the store. Plaintiff stated that previously she was able to drive her children to school, but she no longer does because she had an incident where she had to pull over to the side of the freeway due to pain in her foot. Plaintiff's past hobbies were swimming, exercising and being active, but she can no longer engage in these activities. [Id. at 40-41 (dkt. no. 7-3 at PageID.61-62).]

The VE testified at the hearing about a hypothetical individual with a "light work with a sit/stand option" residual functional capacity ("RFC"). The VE stated an individual with those limitations could perform Plaintiff's past job as an administrative clerk as generally performed, but if an individual with those limitations additionally was "off task 20 percent of the workday and would be absent 2 days a month and that 20 percent off task would be 2 additional 15-minute unscheduled breaks in addition to the normal morning, lunch and afternoon breaks" this person could not perform any work. [Id. at 44-45 (dkt. no. 7-3 at PageID.65-66).]

After the hearing, the ALJ directed the VE to respond to two Vocational Interrogatories. [Exh. 30E, AR at 341-46 (dkt.

no. 7-7 at PageID.366-71)[2]; Exh. 26E, AR at 321-326 (dkt. no. 7-7 at PageID.346-51)[3].] Relevant here, in the 8/24/22 Interrogatory, the ALJ posed a hypothetical of an individual with a RFC of sedentary work, with the additional limitations the ALJ ultimately included in Plaintiff's RFC:

- stand and walk a total of 2 hours;
- sit 6 hours;
- occasional use of ramps and stairs;
- no ladders, ropes, scaffolds;
- occasional stooping, kneeling, crouching, crawling;
- the need to change positions from sitting to standing can be accommodated by job duties requiring standing and the normal morning, lunch, and afternoon breaks;
- requires the ability to elevate the feet during the normal morning, lunch, and afternoon breaks;
- and occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions.

The VE then stated that there are three occupations that exist in significant numbers in the national economy that a hypothetical person with said limitations could perform: Escort Vehicle Driver, Microfilm Document Preparer and Election Clerk. [Exh. 30E, AR at 343-44 (dkt. no. 7-7 at PageID.368-69).] The VE stated that there are: 37,000 jobs in the national economy for escort vehicle drivers; 15,6000 jobs in the national economy for

---

[2] Exhibit 30E is Vocational Interrogatory in the Case of Bonnie Ann Duarte, dated August 24, 2022 ("8/24/22 Interrogatory").

[3] Exhibit 26E is Vocational Interrogatory in the Case of Bonnie Ann Duarte, dated August 5, 2022.

microfilm document preparers; and 5,700 election clerk jobs in the national economy. [Id. at 344 (dkt. no. 7-7 at PageID.369).]

In the Decision, the ALJ found that Plaintiff was insured for purposes of the Social Security Act through December 31, 2024. [Decision, AR at 14 (dkt. no. 7-3 at PageID.35).] At step one of the five-step sequential analysis to determine whether a claimant is disabled, the ALJ found that Plaintiff had not engaged in substantial gainful employment since May 31, 2019, the alleged onset date. [Id.] At step two, the ALJ found that Plaintiff had the following severe impairments: "right foot congenital deformity status post reconstructive surgery with osteoarthrosis; and obesity." [Id. (citing 20 CFR 404.1520(c) and 416.920(c)).] The ALJ also noted Plaintiff had a number of other impairments that were not severe, including mild evidence of arterial occlusive disease, chronic idiopathic urticaria, and anxiety disorder. [Id.] At step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or equaled one of the impairments listed in Title 20 Code of Federal Regulations Part 404, Subpart P, Appendix 1. [Id. at 15 (dkt. no. 7-3 at PageID.36) (citing 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)).]

In the step four analysis, the ALJ found that Plaintiff had the RFC

6

> to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except: stand and walk
> a total of 2 hours; sit 6 hours; occasional use
> of ramps and stairs; no ladders, ropes,
> scaffolds; occasional stooping, kneeling,
> crouching, crawling; the need to change positions
> from sitting to standing can be accommodated by
> job duties requiring standing and the normal
> morning, lunch, and afternoon breaks; requires
> the ability to elevate the feet during the normal
> morning, lunch, and afternoon breaks; and
> occasional exposure to weather, extreme heat,
> extreme cold, wetness, humidity, vibration, and
> atmospheric conditions.

[Id.]

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's testimony about the intensity, persistence, and limiting effects of these symptoms was not consistent with her testimony regarding her daily activities and the medical evidence in the record. [Id. at 16 (dkt. no. 7-3 at PageID.37).] As to Plaintiff's testimony regarding her daily activities, the ALJ found:

> despite the claimant's reported difficulty
> standing, walking, bending, sitting, driving, and
> cane use; she also testified and reported she is
> able to make her bed, prepare breakfast, do light
> duty cleaning throughout the day, although her
> children help her when they are at home,
> including cooking and preparing complete meals
> (5E; 10E).[4] She reported she is able to clean

_____

[4] Exhibit 5E is Plaintiff's Function Report - Adult, dated September 9, 2020 ("9/9/20 Function Report"). [AR at 246-53 (dkt. no. 7-7 at PageID.271-79).] Exhibit 10E is Plaintiff's Function Report - Adult, dated February 1, 2021 ("2/1/21
(. . . continued)

her home and do laundry with assistance from her
children and she does these tasks daily which
takes hours due to the breaks in between (5E;
10E). She reported she shops in stores for
groceries and necessities for an hour (5E; 10E).
Despite her reported difficulty driving, she
testified that she goes to doctors' appointments
and transports her children to sporting events
(5E; 10E). On September 9, 2020, she reported no
problems with personal care and she swims once a
week (5E).

[Id. at 17 (dkt. no. 7-3 at PageID.38).]

The ALJ further found Plaintiff's testimony regarding

the intensity, persistence and limiting effects of her symptoms

was inconsistent with November 2019 and 2020 treatment notes by

podiatrist Robert K. Aki, D.P.M. stating Plaintiff was

ambulatory, [id. (citing Exhs. 2F/20-21; 5F/58-59; 8F/37-38, 40-

41),[5]] and the treatment notes of Graeme Reed, M.D., [id.

(citing Exh. 4F/4-5)[6]]. Dr. Reed noted on December 11, 2020 that,

other than "mild lumbar and right foot tenderness to palpation,

---

Function Report"). [AR at 271-78 (dkt. no. 7-7 at PageID.296-
303).]

    [5] Exhibit 2F includes the Waianae Coast Comprehensive Health
Center progress notes, dated from March 25, 2019 to August 31,
2020. [AR at 396-450 (dkt. no. 7-8 at PageID.422-76).] Exhibit
5F includes the Waianae Coast Comprehensive Health Center
progress notes, dated from March 25, 2019 to January 25, 2021.
[AR at 461-538 (dkt. no. 7-9 at PageID.488-565).] Exhibit 8F
includes the Waianae Coast Comprehensive Health Center progress
notes, dated from February 22, 2021 to February 14, 2022. [AR at
549-614 (dkt. no. 7-9 at PageID.576-641).]

    [6] Exhibit 4F consists of exam notes by Dr. Reed, dated
December 11, 2020 ("12/11/20 Dr. Reed Exam Notes"). [AR at 454-
60 (dkt. no. 7-8 at PageID.480-86).]

inability to dorsiflex the right foot above the neutral position and limited plantar flex to 1-2 degrees, a limp favoring the right leg, the right ankle held fixed in the neutral position, inability to raise herself on her toes or heels or squat," Plaintiff: has full pain-free range of motion, ambulates without difficulty without the support of a cane, is able to sit comfortably without shifting in a chair, has normal movements, has full 5/5 motor strength throughout, has "sensation intact and symmetrical bilaterally, and reflexes active and symmetrical bilaterally," and has no cane prescription on file. [Id. (citing Exh. 4F/4-5).] Further, the ALJ noted that Dr. Reed found Plaintiff has "no tenderness to palpation in the midline or paraspinal musculature bilaterally; no muscle spasm, gross deformities, swelling, or warmth of any joint; full range of motion of all of the joints in the upper and lower extremities; no redness, tenderness, or edema of any of the joints." [Id.] On these bases, the ALJ discounted Plaintiff's testimony about her difficulty standing, walking, bending, sitting, driving, and cane use. [Id.]

The ALJ goes on to cite medical evidence, including x-rays and imaging of Plaintiff's foot and ankle, notes by Dr. Aki and Dr. Reed, and medical opinions and prior administrative medical findings in the record, including the opinions of Dr. Reed, Dr. Aki, state agency medical consultants Neil Shibuya,

9

M.D. and Stacy Lau, M.D., and Alexander Munding, A.P.R.N. [Id. at 17-20 (dkt. no. 7-3 at PageID.38-41).] Ultimately, the ALJ determined that the RFC determination "is supported by the totality of the medical opinion evidence, the objective medical findings, and the other medical evidence found in the record." [Id. at 21 (dkt. no. 7-3 at PageID.42).]

At step five, the ALJ noted that Plaintiff was in the "younger individual" category on the alleged onset date. [Id. (citing 20 CFR 404.1563 and 416.963).] Further, Plaintiff has at least a high school education. [Id. (citing 20 CFR 404.1564 and 416.964).] The Decision does not address whether Plaintiff has transferable job skills because it was not material to the determination of disability given the ALJ found Plaintiff "not disabled." [Id.] The ALJ found that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could make a successful adjustment to the following jobs that exist in significant number in the national economy: Escort Vehicle Driver, Microfilming Document Preparer, and Election Clerk. [Id. at 22 (dkt. no. 7-3 at PageID.43).] The ALJ therefore found that Plaintiff was not under a disability from the alleged onset date, May 31, 2019, through the date of the Decision. [Id. (citing 20 CFR 404.1520(g) and 416.920(g)).]

Plaintiff requested review of the ALJ's decision. [Exh. 16B, AR at 174-75 (dkt. no. 7-5 at PageID.197-98) (request

for review of Decision, dated 10/13/22).] As previously noted, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the Commissioner's final decision. [AC Notice, AR at 1 (dkt. no. 7-3 at PageID.22).]

In the instant Appeal, Plaintiff argues the Decision should be reversed because: the ALJ improperly rejected Plaintiff's testimony; and the ALJ did not show jobs exist in significant numbers that Plaintiff can do. [Opening Brief at 5, 16.] As to the latter, regarding the escort vehicle driver position, Plaintiff contends the ALJ failed to elicit a reasonable explanation from the VE regarding conflicts between the VE testimony and the information in the DOT. [Id. at 19.] Plaintiff asks this Court to reverse the ALJ's Decision that Plaintiff is not disabled and remand the matter for a new administrative hearing. [Id. at 25.]

## STANDARDS

### I.   Review of Social Security Decisions

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawaiʻi Mar. 27, 2020), aff'd, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021). The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc.

11

Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). This Court applies the same standards that the Ninth Circuit applies in reviewing the Commissioner's decision.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. Id. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. Id. Where the record, considered as a whole, could support either affirmance or reversal, the district court must affirm the decision. Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.  **Five-Step Analysis**

The following analysis applies in cases involving review of the denial of social security disability benefits.

To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant at steps one through four. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571-404.1572, 416.971-416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A). The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (footnote omitted).[7] If an impairment

_____

[7] Sullivan has been superseded by statute on other grounds. See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013).

does not meet a listing, it may nevertheless be "medically equivalent to a listed impairment" if the claimant's "symptoms, signs, and laboratory findings are at least equal in severity to" those of a listed impairment. § 404.1529(d)(3). But a claimant cannot base a claim of equivalence on symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled. § 404.1520(d).

If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the ALJ assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work, § 404.1520(e), which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it," § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. § 404.1520(f).

At step five, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the testimony of a vocational expert. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed

in the national economy." § 404.1560(b)(2). An
ALJ may also use "other resources, such as the
'Dictionary of Occupational Titles' and its
companion volumes and supplements, published by
the Department of Labor." Id.

Throughout the five-step evaluation, the ALJ
"is responsible for determining credibility,
resolving conflicts in medical testimony, and for
resolving ambiguities." Andrews v. Shalala, 53
F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020) (some

alterations in Ford) (footnotes omitted).

## **DISCUSSION**

## **I.   Whether It Was Error to Discount Plaintiff's Testimony**

The ALJ reasonably discounted Plaintiff's testimony

regarding the intensity, persistence, and limiting effects of

her symptoms based on conflicts the ALJ identified between

Plaintiff's testimony and her daily activities and the medical

record. See Decision, AR at 16 (dkt. no. 7-3 at PageID.37).

The Ninth Circuit has stated:

To discredit a claimant's symptom testimony when
the claimant has provided objective medical
evidence of the impairments which might
reasonably produce the symptoms or pain alleged
and there is no evidence of malingering, the ALJ
must give specific, clear, and convincing reasons
for rejecting the testimony by identifying which
testimony the ALJ found not credible and
explaining which evidence contradicted that
testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017)

(brackets, emphases, citation, and internal quotation marks

15

omitted). Further, those reasons must be supported by
substantial evidence. Marsh v. Colvin, 792 F.3d 1170, 1174 n.2
(9th Cir. 2015).

        The ALJ identified specific, clear, and convincing
reasons, supported by substantial evidence to discount portions
of Plaintiff's testimony. The ALJ noted Plaintiff's testimony
about her difficulty standing, walking, bending, sitting,
driving, and cane use was contradicted by Plaintiff's testimony
regarding her daily activities and medical evidence. [Decision,
AR at 17 (dkt. no. 7-3 at PageID.38) (citing Exh. 5E (9/9/20
Function Report), AR at 246-53 (dkt. no. 7-7 at PageID.271-79);
Exh. 10E (2/1/21 Function Report), AR at 271-78 (dkt. no. 7-7 at
PageID.296-303).]

        In Plaintiff's 9/9/20 Function Report, Plaintiff
stated that she prepares complete meals daily, does cleaning and
laundry (sometimes with her children's assistance) with breaks,
and swims once a week. Plaintiff stated she shops for groceries
in stores two to three times a week, for two to three hours.
Plaintiff stated she drives and transports her children to and
from school. [Exh. 5E (9/9/20 Function Report), AR at 247-50
(dkt. no. 7-7 at PageID.272-75).] In Plaintiff's 2/1/21 Function
Report, Plaintiff stated she prepares easy meals daily, cleans
her home and does laundry with her children's assistance daily
with breaks in between, and that she shops for groceries in

16

stores for an hour, and rarely goes swimming. Plaintiff stated she can drive and goes to doctors' appointments and transports her children to sporting events on a regular basis.[8] [Exh. 10E (2/1/21 Function Report), AR at 273-75 (dkt. no. 7-7 at PageID.298-300).]

The ALJ noted several inconsistencies between Plaintiff's testimony regarding her ability to ambulate, drive, and her need for a cane with Plaintiff's testimony regarding her daily activities. [Decision, AR at 17 (dkt. no. 7-3 at PageID.38).] If the claimant's level of activity is inconsistent with the claimant's claimed limitations, these activities can be a basis for an adverse credibility determination. See Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir. 2021) (citing Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Here, the ALJ properly identified specific aspects of Plaintiff's testimony that could rationally be considered to conflict with her testimony regarding her daily activities.

---

[8] At the July 28, 2022 hearing, Plaintiff testified that she no longer picks up her children from school because it is "a little farther drive now" and because she "had an incident on the road where [her] foot . . . was in pain and [she] had to pull on the side of the freeway and so that's more so the reason why." See Hrg. Trans., AR at 40-41 (dkt. no. 7-3 at PageID.60-61).

Further, the ALJ found that Plaintiff's testimony about her difficulty standing, walking, bending, sitting, driving, and cane use conflicted with Dr. Aki's November 2019 and 2020 treatment notes stating that Plaintiff was ambulatory, and Dr. Reed's examination notes. [Decision, AR at 17 (dkt. no. 7-3 at PageID.38).] Dr. Aki's November 25, 2019 and November 17, 2020 treatment notes state that Plaintiff "is ambulatory and will benefit from the use of [an ankle-foot orthosis] for treatment and prevent deformity." [Exh. 2F, AR at 416 (dkt. no. 7-8 at PageID.442) (second page of 11/25/19 treatment note); Exh. 5F, AR at 520 (dkt. no. 7-9 at PageID.547) (third page of 11/17/20 treatment note). The ALJ noted that Dr. Reed found in his December 11, 2020 Consultative Examination Report that, although Plaintiff "is unable to dorsiflex her right foot above neutral position and is only able to plantar flex to 1-2 degrees," otherwise there is "full range of motion of all of the joints in the upper and lower extremities," there is "no redness, tenderness, or edema of any of the joints," and Plaintiff "ambulates without difficulty . . . without support or help of a cane." [Decision, AR at 18 (dkt. no. 7-3 at PageID.39) (citing Exh. 4F/4-5).] Further, the ALJ noted Dr. Reed stated Plaintiff "is able to sit comfortably without shifting in the chair," is able to "stand up from a sitting position and sit up from the supine position without difficulty." [Id. (citing

Exh. 4F/4-5).] Finally, the ALJ noted Dr. Reed stated Plaintiff
has 5/5 motor strength, intact and symmetrical sensation, and
active and symmetrical reflexes. [Id. at 19 (dkt. no. 7-3 at
PageID.40) (citing Exh. 4F/5).]

      The ALJ properly contrasts Plaintiff's testimony with
specific portions of the medical record. "Contradiction with the
medical record is a sufficient basis for rejecting the
claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec.
Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see also Johnson v.
Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding the ALJ
properly discounted the claimant's testimony based in part on
contradictions between the testimony and medical evidence). The
ALJ noted contradictions exists between Dr. Reed's medical
report and Dr. Aki's treatment notes and Plaintiff's testimony
regarding her difficulty standing, walking, bending, sitting,
driving, and cane use; and reasonably discounted Plaintiff's
testimony on this basis.

      "The standard isn't whether [a reviewing] court is
convinced, but instead whether the ALJ's rationale is clear
enough that it has the power to convince." Smartt v. Kijakazi,
53 F.4th 489, 499 (9th Cir. 2022). Here, the ALJ identified
specific, clear and convincing reasons why Plaintiff's
limitations were not as severe as she claimed. Therefore, the
ALJ properly determined Plaintiff's testimony regarding her

19

difficulty standing, walking, bending, and sitting, limited
motion, and difficulty driving was not credible.

## II.  **Step Five**

Plaintiff also argues the ALJ did not show there are
significant numbers of jobs in the national economy that
Plaintiff could perform. [Opening Brief at 16-25.] Plaintiff is
correct the Social Security Administration did not meet its
burden at step five of the analysis.

Preliminarily, the Commissioner appears to have
conceded that Plaintiff cannot perform the job of election clerk
and microfilm document preparer. The Commissioner does not
expressly concede that Plaintiff cannot perform the jobs of
election clerk and microfilm preparer, but instead states the
escort driver job alone is sufficient. [Answering Brief at 4.]
Because the Commissioner failed to defend the ALJ's finding that
Plaintiff could perform the other two jobs, the Commissioner has
conceded that Plaintiff cannot perform those jobs. See United
States v. Dreyer, 804 F.3d 1266, 1277 (9th Cir. 2015)
("Generally, an appellee waives any argument it fails to raise
in its answering brief." (citation omitted)); Christine M. v.
Kijakazi, Case No. 3:20-cv-1708-SI, 2021 WL 4709722, at *7 (D.
Or. Oct. 8, 2021) ("Although the Commissioner does not expressly
concede this point, she did not defend the ALJ's reasoning or
respond to Plaintiff's arguments. As a result, the Commissioner

has waived any argument that the ALJ provided on Plaintiff's [activities of daily living] inconsistency." (citations omitted)).

Even if the Commissioner did not concede that Plaintiff cannot perform the jobs of election clerk and microfilm document preparer, neither job exists in significant numbers in the national economy. The VE stated that approximately 15,6000 microfilm document preparer jobs and 5,700 election clerk jobs exist in the national economy. [Exh. 30E, AR at 344 (dkt. no. 7-7 at PageID.369) (page 3 of 8/23 Interrogatory).] Both figures are below the 25,000 amount that the Ninth Circuit determined constituted a "close call" but ultimately was a significant number. Because both 15,6000 and 5,700 are significantly below 25,000, which was considered a close call, these numbers are not significant. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014), see also Beltran v. Astrue, 700 F.3d 386, 390 (9th Cir. 2012) (noting the number of national jobs must be evaluated by distributing these jobs between several regions across the nation, which may show that what appears to be a large national number is not significant when spread out); Giles v. Berryhill, Case No. 2:16-cv-01604-BNW, 2019 WL 6131437, at *7 (D. Nev. Nov. 18, 2019) (finding that 17,521 national jobs was not a significant number); Valencia v. Astrue, No. C 11-06223 LB, 2013 WL 1209353,

at *18 (N.D. Cal. Mar. 25, 2013) (finding that 14,082 national positions did not constitute a significant number).

As to the finding that Plaintiff could perform the job of escort vehicle driver, the ALJ committed legal error. The ALJ had a duty to reconcile apparent conflicts between the VE's statements and the DOT.

> In determining whether an applicant is entitled to disability benefits, an ALJ may consult a series of sources, including a VE and the DOT. Presumably, the opinion of the VE would comport with the DOT's guidance. But if the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.

Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) (brackets, citation, and internal quotation omitted), see also id., n.3 (citing Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (explaining the ALJ's duty to "fully develop the record" as to whether there is consistency between VE occupational evidence and the DOT). The conflict must be "obvious or apparent" for the ALJ to be required to inquire further. Id. "To avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." Id.

Here, Plaintiff's "need to change positions from sitting to standing" is explicitly stated in Plaintiff's RFC.

[Decision, AR at 15 (dkt. no. 7-3 at PageID.36).] Plaintiff's
RFC states this need could "be **accommodated by job duties
requiring standing** and the normal morning, lunch, and afternoon
breaks." Id. (emphasis added).] Further, Plaintiff's RFC
included "the ability to elevate the feet during the normal
morning, lunch, and afternoon breaks;" and the limitations of
"stand[ing] and walk[ing] a total of 2 hours; sit[ting] 6
hours." [Id.] It is apparent that the job of an escort vehicle
driver does not require changing position from sitting to
standing regularly, and likely would not involve standing for up
to two hours. The DOT confirms this. The job of escort vehicle
driver does not include standing, or the ability to regularly
change positions. The DOT describes the position of escort-
vehicle driver as sedentary, and "involves sitting most of the
time, but may involve walking or standing for brief periods of
time." 919.663-022 Escort-Vehicle Driver, DOT (4th ed. 1991),
*available at* 1991 WL 687886. The ALJ should have questioned the
VE to resolve how Plaintiff could perform the job of escort
vehicle driver, which does not include the ability to regularly
change positions from sitting to standing. See Lamear, 865 F.3d
at 1206 ("[E]xpert testimony that a claimant can perform an
occupation involving DOT requirements that appear more than the
claimant can handle – the ALJ is **required** to reconcile the
inconsistency." (emphasis in Lamear) (quotation marks and

citation omitted)). Further, the ALJ should have questioned the VE to determine if Plaintiff would have the ability to both elevate her feet "during the normal morning, lunch, and afternoon breaks" while also switching positions from sitting to standing on said breaks. Because nothing in the record resolves these discrepancies, the Decision is reversed and remanded so that the ALJ can ask the VE to reconcile the position of escort vehicle driver with Plaintiff's limitations. See id. This error was not harmless, because if through further inquiry the ALJ determined that Plaintiff could not perform the job of escort vehicle driver with her RFC, then the Social Security Administration did not meet its burden of demonstrating that Plaintiff could perform a job that exists in significant numbers in the national economy. See Treichler, 775 F.3d at 1099 ("An error is harmless if it is 'inconsequential to the ultimate nondisability determination.'" (quoting Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004))). Remand is proper to allow the ALJ to properly question the VE in order to determine whether Plaintiff can perform the job of escort-vehicle driver.

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal from the Administrative Law Judge's October 5, 2022 Decision is HEREBY GRANTED IN PART AND DENIED IN PART. The Appeal is GRANTED

24

insofar as the Commissioner did not show jobs exist in significant numbers that Plaintiff can do. The Appeal is DENIED insofar as the ALJ's Decision is AFFIRMED regarding the ALJ's discounting of Plaintiff's testimony about her difficulty standing, walking, bending, sitting, driving, and cane use. This case is REMANDED to the ALJ to reconcile apparent conflicts between the VE's statements and the DOT concerning whether Plaintiff can perform the job of vehicle escort driver.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close on **March 14, 2024,** unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 28, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

BONNIE DUARTE VS. KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY; CV 23-00331 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; AND REMANDING CASE FOR FURHTER PROCEEDINGS